**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

_____

No. 24-12360
_____

BRUNA ARENALES-SALGADO-DE-OLIVEIRA,
ALESSANDRA ARENALES-SALGADO-DE-OLIVEIRA,
LUIZ WALDEMAR SALGADO-DE-OLIVEIRA,
M.A.S.O.,
  (a minor child)
KAIQUI CARDOSO-MOREIRA, et al.,

                                        *Plaintiffs-Appellants,*

*versus*

DIRECTOR, UNITED STATES CITIZENSHIP AND
IMMIGRATION SERVICES,
SECRETARY, UNITED STATES DEPARTMENT OF STATE,

                                       *Defendants-Appellees.*

———————————

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 0:23-cv-61167-CMA

———————————

Before JILL PRYOR and LUCK, Circuit Judges, and COVINGTON,* District Judge.

PER CURIAM:

The U-visa program grants nonimmigrant status to victims who assist law enforcement in the investigation or prosecution of crimes and to their eligible family members. Because the number of victims eligible for the U-visa exceeds the number of slots available, the United States Citizenship and Immigration Services (the Service) implemented a regulation creating a waiting list to accommodate the backlog. *See* 8 C.F.R. § 214.14(d)(2). Under the waiting list regulation, the Service "will grant deferred action or parole" to U-visa petitioners and qualifying family members "while [they] are on the waiting list," allowing them to remain in or enter the United States. *Id.*

This case is about the Service's handling of U-visa petitions filed by a group of survivors of the 2018 shooting at Marjory Stoneman Douglas High School in Parkland, Florida, on behalf of themselves and their immediate family members. Some of the Parkland

———————————

* Honorable Virginia M. Covington, United States District Judge for the Middle District of Florida, sitting by designation.

survivors and their family members were inside the United States when they filed their petitions. Others were outside the country.

The Service granted the overseas petitioners (those outside the United States) conditional parole, which allowed them to obtain travel documents to enter and remain in the United States upon successful completion of identity verification and biometric checks at a consulate or embassy. And the Service granted the domestic petitioners (those who were in the United States) deferred action, which allowed them to remain in the United States.

Both groups—the overseas petitioners and the domestic petitioners—brought suit, alleging (as relevant here) that the Service failed to provide them with what they were entitled to under the waiting list regulation. The district court dismissed for failure to state a claim because the waiting list regulation allowed the Service to grant them either deferred action or parole. And because the overseas and domestic petitioners received either deferred action or parole, the Service had already provided them with what was required by the regulation. The overseas and domestic petitioners appeal the dismissal.

After careful review, and with the benefit of oral argument and supplemental briefing, we affirm as to the domestic petitioners. But we vacate the dismissal as to the overseas petitioners and remand for the district court to dismiss without prejudice because their claims are moot.

**FACTUAL BACKGROUND**

We begin with a brief discussion of the statutes and regulations governing the U-visa program before moving to the facts of this case.

### A.  The U-Visa Program

The U-visa program, established in 2000, grants nonimmigrant status to noncitizens who are victims of certain crimes and who cooperate with law enforcement.  *See* Victims of Trafficking and Violence Protection Act, Pub. L. No. 106-386, § 1513(b)(3), 114 Stat. 1464, 1534–35 (2000) (codified as 8 U.S.C. § 1101(a)(15)(U)).  It also allows a victim's qualifying family members to apply for derivative nonimmigrant status.  *See* 8 U.S.C. § 1101(a)(15)(U)(ii).

Congress capped the number of U-visas available each year at 10,000, not counting derivative family-member visas.  *Id.* § 1184(p)(2); 8 C.F.R. § 214.14(d)(1).  The number of yearly petitions far outstrips the cap, so the Service created a U-visa waiting list for otherwise eligible petitions in excess of the cap.  *See* 8 C.F.R. § 214.14(d)(2).  Under the waiting list regulation, "[a]ll eligible petitioners who, due solely to the cap, are not granted [U-visas] must be placed on a waiting list and receive written notice of such placement."  *Id.*  The waiting list is long—over 200,000 petitioners, according to the allegations in the complaint—meaning that new petitioners may have to wait twenty years before obtaining their U-visas.

Petitioners and their qualifying family members on the waiting list are entitled to certain benefits. Relevant here, "[the Service] will grant deferred action or parole to [U-visa] petitioners and qualifying family members while the [U-visa] petitioners are on the waiting list." *Id.* Deferred action "means that . . . no action will . . . be taken to proceed against an apparently deportable alien, even on grounds normally regarded as aggravated." *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 484 (1999) (quoting 6 C. Gordon, S. Mailman, & S. Yale–Loehr, Immigration Law and Procedure § 72.03 [2][h] (1998)); *see also* 8 C.F.R. § 274a.12(c)(14) (describing deferred action as "an act of administrative convenience to the government which gives some cases lower priority" for removal). Deferred action applies only to individuals in the United States because "those outside the United States have no potential removal to be deferred." *See* U.S. Citizenship and Immigr. Servs. Pol'y Manual, Vol. 3, Part C, Ch. 5 § C.7, https://www.uscis.gov/policy-manual/volume-3-part-c-chapter-5 [https://perma.cc/GZ3Q-PLJT] (last visited May 26, 2026).

Parole, meanwhile, is an administrative practice that allows "a non-citizen to enter the United States temporarily while investigation of eligibility for admission takes place." *Succar v. Ashcroft*, 394 F.3d 8, 15 (1st Cir. 2005); *see also Ibragimov v. Gonzales*, 476 F.3d 125, 131 (2d Cir. 2007) (explaining that parole "is an administrative practice whereby the government allows" an otherwise inadmissible alien "to remain in the United States pending review of . . . his immigration status"). The Attorney General has "discretion" to "parole into the United States temporarily . . . only on a case-by-

case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States." 8 U.S.C. § 1182(d)(5)(A).

### B. *This Case*

This case stems from the 2018 shooting at Marjory Stoneman Douglas High School in Parkland, Florida. On February 14, 2018, Nicholas Cruz, a nineteen-year-old former student, entered the 1200 building at the school and opened fire. In six minutes, he murdered seventeen students and staff and injured seventeen more. At the time, Parkland was the deadliest mass shooting at a high school in United States history.

Following the shooting, twenty-one noncitizen Parkland victims petitioned for U-visas for themselves and fifty-two of their immediate noncitizen family members. Of the seventy-three victims and family members, sixty-five are domestic petitioners, and eight are overseas petitioners. All are on the U-visa waiting list. The Service granted the domestic petitioners deferred action. And the overseas petitioners received conditional parole, with one of them successfully obtaining travel documents allowing them to enter the United States.

### PROCEDURAL BACKGROUND

The overseas and domestic petitioners brought this lawsuit in September 2023. Relevant here, they raised two claims against the Service under the Administrative Procedure Act: (1) a claim for arbitrary and capricious denial of parole under 5 U.S.C. section 706,

and (2) a claim for unlawful withholding or unreasonable delay of parole under 5 U.S.C. section 555(b). The premise of both claims was that petitioners were entitled to some form of parole at the same time as they were added to the waiting list, but the Service unlawfully failed to provide them with parole—which they called "waiting list parole"—"trap[ping] them either outside or inside the United States, separat[ing] them from their families, and exacerbat[ing] their trauma."

The overseas petitioners alleged that the waiting list regulation required the Service to give them "deferred action or parole" while they were on the waiting list, but because deferred action is available only to those already in the United States, they must be given parole. 8 C.F.R. § 214.14(d)(2). Although they already received conditional parole, this "remain[ed] a violation of the regulations" because "[the Service] purport[ed] to issue 'conditional' parole, but the regulations make waiting list parole nondiscretionary." The overseas petitioners therefore requested that the district court order the Service "to work . . . to schedule all necessary appointments at the relevant consulates" and to "issue necessary process for [overseas petitioners] to seek physical entry into the United States."

The domestic petitioners alleged that they were entitled to advance parole at the same time they were added to the waiting list. Advance parole is a device that permits "the government [to] decide[] in advance of an alien's arrival that the alien will be paroled

into the United States when he arrives at a port-of-entry." *Ibragimov*, 476 F.3d at 132 (citing *Succar*, 394 F.3d at 15 n.7). Under the advance parole regulation, "[w]hen parole is authorized for an alien who will travel to the United States without a visa, the alien shall be issued an appropriate document authorizing travel." 8 C.F.R. § 212.5(f). The advance parole regulation, the domestic petitioners claimed, required the Service to grant them advance parole in addition to deferred action because parole is mandatory, not discretionary, for members of the waiting list. And, they alleged, without advance parole, they were unable to visit their families abroad because they had no guarantee that they would be allowed back into the United States.

The Service moved to dismiss the overseas and domestic petitioners' claims. The district court granted the motion, explaining that the overseas and domestic petitioners failed to state a claim because "section 214.14(d)(2) can only be read one natural way: it mandates *either* advance parole *or* deferred action, but not both, leaving [the Service] a choice." The district court concluded that the overseas and domestic petitioners had received either deferred action or parole, so the Service did not unlawfully withhold, deny, or delay parole. This appeal followed.

## STANDARD OF REVIEW

"[S]ubject matter jurisdiction issues present questions of law that we review de novo, 'even when [they are] raised for the first time on appeal.'" *Dupree v. Owens*, 92 F.4th 999, 1004 (11th Cir. 2024) (quoting *United States v. Iguaran*, 821 F.3d 1335, 1336 (11th Cir.

2016) (per curiam)). "[T]he burden of establishing" subject-matter jurisdiction "rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citing *McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 182–83 (1936)).

We review de novo a dismissal of a complaint for failure to state a claim, accepting the allegations in the complaint as true and construing them in the light most favorable to the plaintiffs. *Henderson v. McMurray*, 987 F.3d 997, 1001 (11th Cir. 2021).

## DISCUSSION

We'll start by considering the dismissal of the overseas petitioners' claims. Then, we'll turn to the dismissal of the domestic petitioners' claims.

### A. Overseas Petitioners

"We have a threshold obligation to ensure that we have jurisdiction to hear an appeal, for 'without jurisdiction we cannot proceed at all in any cause.'" *Corley v. Long-Lewis, Inc.*, 965 F.3d 1222, 1227 (11th Cir. 2020) (citation modified) (quoting *Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514 (1869)). Article III of the Constitution limits our jurisdiction to "[c]ases" and "[c]ontroversies." U.S. Const. Art. III, § 2. "The doctrine of mootness derives directly from the case or controversy limitation because 'an action that is moot cannot be characterized as an active case or controversy.'" *Soliman v. United States ex rel. INS*, 296 F.3d 1237, 1242 (11th Cir. 2002) (per curiam) (quoting *Adler v. Duval Cnty. Sch. Bd.*, 112 F.3d

1475, 1477 (11th Cir. 1997)).  In evaluating mootness, "[t]he fundamental question is whether events have occurred that deprive us of the ability to give the appellant meaningful relief." *Djadju v. Vega*, 32 F.4th 1102, 1107 (11th Cir. 2022) (citing *United States v. Al-Arian*, 514 F.3d 1184, 1189 (11th Cir. 2008) (per curiam)).  "If events that occur subsequent to the filing of a lawsuit or an appeal deprive the court of the ability to give the plaintiff or appellant meaningful relief, then the case is moot" and "dismissal is required because mootness is jurisdictional." *Al Najjar v. Ashcroft*, 273 F.3d 1330, 1336 (11th Cir. 2001).

The overseas petitioners do not present a live dispute because the Service has already given them the relief they requested. In the complaint, the overseas petitioners requested that the court order the Service "to work . . . to schedule all necessary appointments at the relevant consulates" and to "issue necessary process for [overseas petitioners] to seek physical entry into the United States."  The Service has done exactly that.

When it approved the overseas petitioners for the waiting list, the Service sent them notices informing them that "[the Service] has conditionally approved your request for parole . . . for a period of one year contingent upon successful completion of identity verification and biometric checks."  The notices instruct that the overseas petitioners can "schedule an appointment for identity verification and biometrics collection" at their local United States embassy or consulate by completing Department of State form DS-160.  The notices advise the overseas petitioners that, following the

appointment, they "will be issued" a travel document unless the Service "determines that [the petitioner] is not eligible for waiting list placement or parole due to new information obtained after they appear for identity verification and biometric collection at the [United States] [e]mbassy or [c]onsulate," in which case the Service "may remove [the petitioner] from the waiting list and deny [the] parole request."  The notices further inform the overseas petitioners that they must present the travel document to a Customs and Border Protection officer at a United States port-of-entry "within thirty (30) days of the date the travel document is issued" and that Customs and Border Protection "generally will approve your entry to the United States and will issue Form I-94, Arrival/Departure Record, for the period of parole that [the Service] approved."

The Service has therefore allowed the overseas petitioners to "schedule all necessary appointments at the relevant consulates" and "issue[d] necessary process for [overseas petitioners] to seek physical entry into the United States."  That's the relief the overseas petitioners sought in the complaint, and that's the relief that they received.

The overseas petitioners nevertheless insist that the Service must provide them with "waiting list parole," which they claim requires something more than the conditional parole they received. But they don't say what more is required.  The overseas petitioners have been approved for parole.  All they must do is conduct "identity verification and biometrics collection" at a United States embassy or consulate, and they "will be issued" a travel document,

allowing them to travel to the United States and obtain the "parole that [the Service] approved." Although the overseas petitioners initially alleged that "waiting list parole" meant that the Service must grant "parole directly to members of the waiting list abroad without the cooperation, participation, or intervention of" an embassy or consulate, they later conceded that they have no qualms with undergoing identity verification and biometric collection at an embassy or consulate before receiving their travel documents. Once they've obtained their travel documents, the only step for them to take is to travel to the United States and obtain the pre-approved parole at a port-of-entry. Indeed, two overseas petitioners scheduled appointments with their local consulates and one received a travel document, though he did not use it to enter the United States. The remaining six never scheduled an appointment with their local United States embassy or consulate.

Thus, the overseas petitioners received the relief they requested in the complaint but failed to avail themselves of the relief received. They received conditional parole authorization once they were approved for the waiting list. There is no more relief the Service can provide them until they travel to the United States. *Cf.* 8 C.F.R. § 212.5(c) (providing that an alien may "appl[y] for parole" "at a port-of-entry"). Because "it is impossible for [us] to grant any effectual relief whatever" to the overseas petitioners, their claims are moot. *See Knox v. Serv. Emps. Int'l Union, Loc. 1000*, 567 U.S. 298, 307 (2012) (citation modified).

Unable to identify any defect in the parole approval they already received, the overseas petitioners suggest for the first time in their supplemental briefing that the conditional parole provided is insufficient because the travel documents only provide a thirty-day window to enter the United States, which is too little time for the overseas petitioners to wind up their affairs before entering the United States. But that's a different lawsuit. Here, the overseas petitioners alleged that they were denied parole approval required by law, not that they were forced to act on parole approval too quickly. They can't amend their claim on appeal. *See Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004) ("This Court has repeatedly held that an issue not raised in the district court and raised for the first time in an appeal will not be considered by this court." (citation modified)).

In sum, "[t]he relief [the overseas petitioners] seek unmistakably establishes that we can offer no effective remedy." *See Gagliardi v. TJCV Land Tr.*, 889 F.3d 728, 733 (11th Cir. 2018). Their claims are therefore moot, and we must dismiss them for lack of subject-matter jurisdiction. *See Al Najjar*, 273 F.3d at 1336.

## B. Domestic Petitioners

Next, we address the domestic petitioners' claims. Before we get into the merits though, we must tackle two jurisdictional issues: (1) whether 8 U.S.C. section 1252(a)(2)(B)(ii) strips us of jurisdiction, and (2) whether the domestic petitioners have standing.

### 1.  8 U.S.C. section 1252(a)(2)(B)(ii)

First, the Service argues that section 1252(a)(2)(B)(ii) deprives us of subject-matter jurisdiction over the domestic petitioners' claims.  "Within constitutional bounds, Congress decides what cases the federal courts have jurisdiction to consider."  *Bowles v. Russell*, 551 U.S. 205, 212 (2007); *see also Patchak v. Zinke*, 583 U.S. 244, 252–53 (2018) ("[W]hen Congress strips federal courts of jurisdiction, it exercises a valid legislative power no less than when it lays taxes, coins money, declares war, or invokes any other power that the Constitution grants it.").  Here, Congress decided that "no court shall have jurisdiction to review" any "decision or action . . . which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security."  8 U.S.C. § 1252(a)(2)(B)(ii); *see also Kucana v. Holder*, 558 U.S. 233, 248 (2010) (explaining that section 1252(a)(2)(B)(ii) bars judicial review of decisions "made discretionary by statute").

The decision to grant or deny parole is committed to the Secretary's discretion by statute.  *See* 8 U.S.C. § 1182(d)(5)(A) ("The Secretary of Homeland Security may . . . in his discretion parole into the United States . . . any alien applying for admission to the United States . . . .");  *see also Kucana*, 558 U.S. at 239 n.3 ("'[T]his subchapter' refers to Title 8, Chapter 12, Subchapter II, of the United States Code, codified at 8 U.S.C. §§ 1151–1381 and titled 'Immigration.'").  So, section 1252(a)(2)(B)(ii) bars our review of the discretionary decision to grant or deny parole and any "actions taken in the course of the decision-making process."  *Kanapuram v.*

*Dir., U.S. Citizenship & Immigr. Servs.*, 131 F.4th 1302, 1307–08 (11th Cir. 2025) (citation modified).

But this jurisdictional bar does not extend to "allegations that an agency failed to follow its own binding regulations," because an agency lacks the discretion to decline to follow its regulations. *Kurapati v. U.S. Bureau of Citizenship & Immigr. Servs.*, 775 F.3d 1255, 1262 (11th Cir. 2014) (per curiam) (citation modified); *see also Kanapuram*, 131 F.4th at 1308 (recognizing that section 1252(a)(2)(B)(ii) might not bar review "were [the Service] to violate its own binding regulations in processing visa applications"). In *Kurapati*, for example, the plaintiffs sought to challenge the Service's revocation of their visa petitions, arguing that the Service failed to comply with its prerevocation notice regulations. *Kurapati*, 775 F.3d at 1258. The Service argued that section 1252(a)(2)(B)(ii) deprived the courts of subject-matter jurisdiction because the decision to revoke a visa petition was committed to the Service's discretion. *Id.* at 1259. This was mistaken, we explained, because the claim—that the Service failed to follow the correct procedure in revoking the petitions—was aimed at the Service's compliance with its own regulations, and not its discretionary decision to revoke the petitions. *Id.* at 1262.

Here, for the same reasons, section 1252(a)(2)(B)(ii) does not bar our review because the domestic petitioners claim that the Service failed to follow its binding regulations. The core of their claim is that the Service "violate[d] [8 C.F.R. sections] 212.5(f) and 214.14(d)(2) that require the [Service] to provide [w]aiting [l]ist

[p]arole to [U-visa] applicants when they are placed on the waiting list," and "commit[ted] legal error by considering [w]aiting [l]ist [p]arole as discretionary, though it is mandatory under [sections] 214.14(d)(2) and 212.5(f)." As in *Kurapati*, they do not challenge a discretionary decision to grant or deny parole under 8 U.S.C. section 1182(d)(2)(A). Rather, they challenge the Service's failure to follow its regulations under 8 C.F.R. sections 214.14(d)(2) and 212.5(f), which they allege mandate the Service to grant parole concurrently with waiting list approval. *Cf. Patel v. U.S. Att'y Gen.*, 971 F.3d 1258, 1268 (11th Cir. 2020) (en banc) (explaining that an agency may choose to make a congressional delegation of discretionary authority mandatory through rulemaking). And because they challenge the Service's failure to follow its own regulations, section 1252(a)(2)(B)(ii) does not bar our review. *See Kurapati*, 775 F.3d at 1262; *see also Kanapuram*, 131 F.4th at 1308.

The Service disputes the domestic petitioners' reading, and argues that it has complied with its regulations. But that question—whether the Service in fact followed its own regulations—goes to the merits of the domestic petitioners' claims, and not our jurisdiction. *See Kurapati*, 775 F.3d at 1262 (finding argument that the Service complied with its own regulations "reaches the merits—actually, the very heart—of [plaintiff's] claim" and "does not decide the jurisdictional question"). We therefore conclude that section 1252(a)(2)(B)(ii) does not strip us of subject-matter jurisdiction to review the domestic petitioners' claims.

## 2. Standing

Second, the Service argues that the domestic petitioners do not have standing to pursue their claims because they do not sufficiently allege an injury in fact. "To bring suit in federal court, a party must have constitutional standing, which is 'an essential and unchanging part of the case-or-controversy requirement of Article III.'" *Worthy v. City of Phenix City*, 930 F.3d 1206, 1213 (11th Cir. 2019) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). "To have standing, an individual plaintiff must have suffered an injury in fact, fairly traceable to the defendant, that the court can redress with an order directed at the defendant." *Baughcum v. Jackson*, 92 F.4th 1024, 1031 (11th Cir. 2024) (citing *Lujan*, 504 U.S. at 560). An injury in fact is "'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (quoting *Lujan*, 504 U.S. at 560).

Here, the domestic petitioners' alleged injury is that the Service's failure to grant parole "traps them either outside or inside the United States, separates them from their families, and exacerbates their trauma." The domestic petitioners allege that without advance parole they "cannot return to the United States or cannot travel abroad to be with family without risking their ability to live in the United States."

The Supreme Court has recognized that "a person's interest in being united with his relatives is sufficiently concrete and particularized to form the basis of an Article III injury in fact." *Trump v.*

*Hawaii*, 585 U.S. 667, 698 (2018). In *Hawaii*, the Supreme Court considered a constitutional challenge to a presidential proclamation suspending entry of nationals of certain Muslim-majority countries. *Id.* at 677. The challengers included three United States citizens or lawful permanent residents who had relatives from countries subject to the proclamation that had applied for visas to enter the United States. *Id.* at 681–82. In discussing their standing, the Supreme Court found that their injury—"the alleged real-world effect that the [p]roclamation has had in keeping them separated from certain relatives who seek to enter the country"—was sufficient to supply them with "Article III standing to challenge the exclusion of their relatives" from the United States. *Id.* at 698–99.

That's exactly the type of injury alleged here. The domestic petitioners allege that without advance parole allowing them to return to the United States, they are unable to make specific plans to travel to see their relatives overseas. The Service argues that the domestic petitioners nevertheless don't have standing because their allegation is that they are harmed by not being able to travel from the United States to foreign countries. But that's not quite right. The domestic petitioners allege that without advance parole, they cannot leave the United States because they have no way to return, preventing them from making plans to travel abroad to visit family in the first place. This "alleged real-world effect that the" Service's actions have "in keeping them separated from certain relatives" is a sufficient injury to supply them with Article III standing. *See id.* at 698–99.

### 3.  Advance Parole

With jurisdiction out of the way, we turn to the merits of the domestic petitioners' claims.  They argue that the district court erred in dismissing them because the waiting list regulation requires that they be granted advance parole in addition to deferred action.  And because they alleged that the Service did not award them advance parole, they did not fail to state a claim.

The waiting list regulation does not require the Service to grant the domestic petitioners parole—advance or otherwise.  In reading the regulations, "we start—and often end—with the text." *See Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1362 (11th Cir. 2018) (citing *Chase Bank USA, N.A. v. McCoy*, 562 U.S. 195, 204 (2011)).  The waiting list regulation, section 214.14(d)(2), provides that the Service "will grant deferred action or parole to [U-visa] petitioners and qualifying family members while the [U-visa] petitioners are on the waiting list."  8 C.F.R. § 214.14(d)(2).  "The word 'or' is almost always disjunctive, and is generally used to indicate an alternative."  *Campos-Chaves v. Garland*, 602 U.S. 447, 457 (2024) (citation modified); *see also Encino Motorcars, LLC v. Navarro*, 584 U.S. 79, 87 (2018) (reading statute by applying "the ordinary, disjunctive meaning of 'or'"); *Brown v. Budget Rent-A-Car Sys., Inc.*, 119 F.3d 922, 924 (11th Cir. 1997) (per curiam) ("As a general rule, the use of a disjunctive in a statute indicates alternatives and requires that those alternatives be treated separately." (citation modified)).  The plain text of section 214.14(d)(2) therefore gives the Service discretion to

20                    Opinion of the Court                    24-12360

grant either "deferred action or parole," as the circumstances may warrant.  8 C.F.R. § 214.14(d)(2).

Of course, there may be cases where "statutory context can overcome the ordinary, disjunctive meaning of 'or.'" *Encino Motorcars*, 584 U.S. at 87; *see also Shaw v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 605 F.3d 1250, 1253 (11th Cir. 2010) ("As we have recognized in our cases, it is an established principle that the word 'or' is frequently construed to mean 'and,' and *vice versa*, in order to carry out the evident intent of the parties." (citation modified)).  But there is no reason to depart from ordinary meaning here because "statutory context points in the same direction as the usual meaning." *See Campos-Chaves*, 602 U.S. at 457.  The statute authorizing parole provides that the Secretary of Homeland Security may "in his discretion parole into the United States temporarily . . . only on a case-by-case basis for urgent humanitarian reasons or significant public benefit."  8 U.S.C. § 1182(d)(5)(A).  This case-by-case requirement restricts the Secretary's discretion to grant parole.  *See Biden v. Texas*, 597 U.S. 785, 806 (2022) (noting that "[parole] authority is not unbounded: [the Department of Homeland Security] may exercise its discretion to parole applicants 'only on a case-by-case basis for urgent humanitarian reasons or significant public benefit.'" (quoting 8 U.S.C. § 1182(d)(5)(A))).[1]  Yet the domestic petitioners' contention—that "or" means "and"—would require an

---

[1] Congress viewed this limitation on parole discretion as sufficiently important to give state attorneys general statutory standing to pursue a cause of action against the Secretary of Homeland Security "alleging a violation of the limitation under [section 1182(d)(5)(A)] that parole solely be granted on a case-by-

automatic grant of parole to an entire class of waitlisted petitioners without the required case-by-case parole determination. *See* 8 U.S.C. § 1182(d)(5)(A); *cf.* 5 U.S.C. § 706 (requiring a reviewing court to "hold unlawful and set aside agency action . . . in excess of statutory . . . authority"); *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412 (2024) ("Courts must exercise their independent judgment in deciding whether an agency has acted within its statutory authority, as the [Administrative Procedure Act] requires."). By contrast, reading "or" as disjunctive is consistent with the case-by-case requirement for granting parole—although the Service "will grant" waitlisted petitioners some form of relief that allows them to remain in the United States, it retains discretion to choose between "deferred action or parole" according to the needs of the individual case. 8 C.F.R. § 214.14(d)(2). We therefore see no support for the domestic petitioners' position that section 214.14(d)(2) requires the Service to grant parole to the domestic petitioners.

The domestic petitioners raise two principal objections. First, they argue that the Service must provide both deferred action and parole because the advance parole regulation, 8 C.F.R. section 212.5(f), provides that "[w]hen parole is authorized for an alien who will travel to the United States without a visa, the alien shall

---

case basis and solely for urgent humanitarian reasons or a significant public benefit, that harms such [s]tate or its residents." Laken Riley Act, Pub. L. No. 119-1, § 3(d)(2), 139 Stat. 3, 5 (2025) (codified at 8 U.S.C. § 1182(d)(5)(C)).

be issued an appropriate document authorizing travel." They contend that section 214.14(d)(2) "authorizes" parole for the domestic petitioners, and because parole is "authorized," the Service must issue them advance parole under section 212.5(f).

But the domestic petitioners confuse the availability of parole with its authorization. Section 214.14(d)(2) makes available two different avenues of relief for waitlisted U-visa petitioners: deferred action or parole. Just because those two options are available for the Service to choose from does not mean that the Service has authorized one or the other for any particular U-visa petitioner. *See* 8 U.S.C. § 1182(d)(5)(A). The Service must still choose which one to grant. Here, the Service authorized deferred action for the domestic petitioners, not parole, so section 212.5(f) does not help their case. Moreover, as we previously explained, such categorical grants of parole are inconsistent with section 1182(d)(5)(A)'s "case-by-case" consideration of parole. *See id.*

Second, the domestic petitioners posit a hypothetical where they chose to travel outside the United States. In that case, they say, they would no longer have deferred action because deferred action only applies to those in the United States, so the waiting list regulation would require the Service to grant them advance parole because the Service would be obligated to grant parole "while [they] are on the waiting list." 8 C.F.R. § 214.14(d)(2). But this hypothetical is just that—a hypothetical. None of the domestic petitioners are outside the United States. Right now, based on the al-

legations in the complaint, the Service had a choice to grant deferred action or parole. The Service was not required to grant them advance parole, and the domestic petitioners are not entitled to advance parole as a matter of law.

## CONCLUSION

For these reasons, we affirm the dismissal of the domestic petitioners' claims, and we vacate the dismissal as to the overseas petitioners and remand for the district court to dismiss their claims without prejudice as moot. *See Key Enters. of Del., Inc. v. Venice Hosp.*, 9 F.3d 893, 899 (11th Cir. 1993) (en banc) (per curiam) ("[W]here it appears upon appeal that the controversy has become entirely moot, it is the duty of the appellate court to set aside the decree below and to remand the cause with directions to dismiss." (citation modified)).

**AFFIRMED IN PART, AND VACATED AND REMANDED IN PART.**